COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-198-CR

KENNETH WAYNE DOWNS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

OPINION

------------

Introduction

A jury convicted Appellant Kenneth Wayne Downs for aggravated sexual assault of a disabled person.  Appellant raises two points on appeal.  First, Appellant argues that he was denied effective assistance of counsel because his trial counsel failed to object to possible hearsay statements, failed to request an evidentiary hearing regarding whether a witness was qualified as an expert, and failed to request certain defenses be included in the jury charge.  In his second point, Appellant argues that he was improperly precluded from asserting the medical care defense to aggravated sexual assault in violation of his right to equal protection of the law.  We affirm. 

Factual and Procedural Background

J.G. was admitted to Huguley Memorial Medical Center on October 14, 2003, due to an accelerated heart rate.  Prior to this time, J.G. had suffered multiple strokes and had a pacemaker implanted.  She was placed in a progressive care unit and monitored regularly.  While in the progressive care unit, J.G.’s husband normally stayed with her, but he was not present on the night of October 21, 2003, when the alleged events that gave rise to this case occurred.  During that night, J.G.’s heart monitor recorded that her heart rate was 152 beats per minute.  The normal hospital routine was for a technician to notify the nurse in charge of the patient.  On that night, the nurse in charge of J.G. was Appellant.  Unable to contact Appellant, the technician on duty notified another nurse, who went to check on J.G.  When the nurse arrived at J.G.’s room, he knocked, opened the door, and observed Appellant already in the room standing behind J.G..  Both Appellant and J.G. were facing away from the nurse, and J.G. was lying on her side.  The nurse testified that he could not see what Appellant was doing but assumed Appellant was cleaning up an episode of incontinence.  The nurse asked whether Appellant needed assistance, to which Appellant responded he did not. 

The next day, J.G.’s daughter visited her.  J.G. cried and told her daughter that Appellant had inserted some unknown object—roughly the size of a cell phone—in her anus the night before and that it had caused her great pain.  J.G. testified that she did not cry out when the event occurred because she feared for her safety.  She also testified that later on that same night, Appellant had returned and, after having taken her to the bathroom, Appellant rubbed lotion on her and penetrated her vagina with his finger.  J.G. testified that she was not physically able to stop Appellant and that he had given her injections following both events, which caused her to become sleepy.  J.G.’s daughter reported J.G.’s allegations to the progressive care supervisor.  The supervisor notified the police.  J.G. repeated to the investigating detective that Appellant had touched and penetrated both her anus and vagina.  J.G. was taken to the emergency room for a rape exam that was inconclusive.  

The grand jury indicted Appellant for aggravated sexual assault of a disabled individual in a two-count indictment—one count alleging anal penetration with an unknown object and the other count alleging vaginal penetration with Appellant’s finger.  At trial, Appellant testified that he had penetrated J.G.’s anus, but that it was done using a rectal thermometer and with her consent in order to accurately measure her temperature.  He denied ever having touched her vaginal area or applying lotion to her.  Appellant also testified that he would not have performed a rectal temperature reading without J.G.’s consent.  

At trial, the supervisor of the progressive care unit testified, without objection, to her conversation with J.G., including what J.G. had said regarding these alleged events.  Moreover, the detective investigating the events testified, without objection, concerning statements made to him during his investigation by both J.G.’s daughter and the progressive care supervisor.  The detective also testified, without objection, that based on his “experience, training, and knowledge” gained through his investigation of roughly 300 sexual assault cases that an inconclusive rape exam was neither unusual nor conclusive of whether a sexual assault had occurred.  A jury found Appellant guilty of count one—aggravated sexual assault of a disabled person.  The trial court declared a mistrial regarding count two and sentenced Appellant to twenty years’ incarceration.  Appellant then filed this appeal. 

Ineffective Assistance of Counsel

Hearsay and the Failure to Request a Hearing

In part of his first point, Appellant argues that he was denied effective assistance of counsel because his trial counsel failed to object to possible hearsay statements and failed to request a hearing to determine whether a witness was qualified as a medical expert.  We disagree.  

We apply a two-pronged test to ineffective assistance of counsel claims.  
Strickland v. Washington
, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); 
Thompson v. State
, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, appellant must show that
 counsel’s performance was deficient; second, appellant must show the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 104 S. Ct. at 2064; 
Hernandez v. State
, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

When evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case.  
Thompson
, 9 S.W.3d at 813.  The issue is whether counsel’s assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error.  
Strickland
, 466 U.S. at 688-89, 104 S. Ct. at 2065.  “[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.”  
Id.
 at 690, 104 S. Ct. at 2066.  An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  
Thompson
, 9 S.W.3d at 814.  Our scrutiny of counsel’s performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight.  
Strickland
, 466 U.S. at 689, 104 S. Ct. at 2065.  When the record is silent as to possible trial strategies employed by defense counsel, we will not speculate on the reasons for those strategies.  
See Jackson v. State
, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

In his motion for new trial, Appellant did not allege ineffective assistance of counsel, which would have afforded the trial court the opportunity to conduct a hearing as to these alleged failures.  As such, the record is not sufficiently developed to allow us to do more than speculate as to the strategies of Appellant’s trial counsel.  
See Jackson
, 877 S.W.2d at 771.  Thus, we cannot say that Appellant was denied effective assistance of counsel due to trial counsel’s lack of objection to alleged hearsay statements or failure to request a hearing on the witness’ qualifications.  Appellant has a more appropriate remedy in seeking a writ of habeas corpus to allow him the opportunity to develop evidence to support his complaints.  
See
 
Robinson v. State
, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000) (noting that a postconviction writ proceeding is the preferred method for gathering the facts necessary to substantiate an ineffective assistance of counsel claim). 

Necessity and Medical Care Defenses

In the remaining part of his first issue, Appellant argues that he was denied effective assistance of counsel because his trial counsel failed to request that instructions on the defenses of necessity and medical care be included in the jury charge.  We disagree.  

Generally, a defendant is entitled to a jury instruction on any defensive issue raised by the evidence. 
 Granger v. State
, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999). This right exists whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence.
  Hamel v. State
, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).  If the evidence, viewed in a favorable light, does not establish the defensive issue, an instruction is not required.  
Dyson v. State
, 672 S.W.2d 460, 463 (Tex. Crim. App 1984).  

These general rules become more distinct in the realm of effectiveness of counsel.  
See Vasquez v. State
, 830 S.W.2d 948, 950-51 (Tex. Crim. App. 1992).  The failure to request a defense violates the first prong of 
Strickland 
if the evidence of a particular case demonstrates that the failure to seek an instruction on a given defense constitutes unacceptable trial tactic. 
See id. 
(holding that testimony by defendant clearly indicated he had acted out of a perceived necessity and therefore it was unacceptable trial tactic to fail to request an instruction on necessity).
  
But if a defendant’s own testimony negates a defense, counsel’s failure to seek an instruction is not a deficiency in trial counsel’s performance.  
Jackson v. State
, 491 S.W.2d 155, 156 (Tex. Crim. App. 1973).  Furthermore, trial counsel’s failure to request a defense is not ineffective assistance of counsel if a defense is neither recognized by statute or the common law.  
See Vasquez
, 830 S.W.2d at 950.

The Defense of Necessity

Appellant argues that he was entitled to an instruction on the defense of necessity.  We disagree.  Under the defense of necessity, a defendant’s actions are justified if the actor reasonably believes the conduct is immediately necessary to avoid imminent harm, the desirability or urgency of avoiding the harm clearly outweighs the harm sought to be prevented by the laws proscribing the conduct, and a legislative purpose to exclude the justification does not otherwise plainly appear. 
 See
 
Tex. Penal Code Ann.
 § 9.22 (Vernon 2003).  “Imminent” means “ready to take place, near at hand, impending, hanging threateningly over one’s head, menacingly near.” 
 Devine v. State
, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989).  Harm is imminent when there is an emergency situation and the actor’s conduct is immediately necessary to avoid that harm.  
Jackson v. State
, 50 S.W.3d 579, 595 (Tex. App.—Fort Worth 2001, pet. ref’d). 
 In other words, a split-second decision would be required—without time to consider the law—for a danger to be considered imminent. 
 Id. 
 
Furthermore, the defense of necessity requires substantially admitting the committed offense or at a minimum admitting the conduct that forms that offense.  
See Young v. State
, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999); 
see also Hubbard v. State
, 133 S.W.3d 797, 801 (Tex. App.—Texarkana 2004, pet. ref’d).  

Appellant was not entitled to the defense of necessity because his own testimony negated the defense.  It cannot be said that Appellant substantially admitted the alleged offense or the conduct necessary to form the alleged offense.  Appellant testified that he had J.G.’s consent to insert a thermometer into her anus and that is what he did.  Even if this court were to assume that a thermometer was the equivalent of an unknown object, it still cannot be said that Appellant admitted the alleged offense because Appellant’s testimony was predicated on his having received J.G.’s consent.  Under the penal code, aggravated sexual assault is founded on 
not
 having the alleged victim’s consent.  
See
 
Tex. Penal Code Ann.
 § 22.021 (Vernon 2003). 

Moreover, even if Appellant had substantially admitted to the offense, he was still not entitled to an instruction on the defense of necessity.  Appellant testified that he believed his initial taking of J.G.’s temperature using an oral thermometer was inaccurate.  He further testified that he was concerned that a potentially high temperature could be indicative of serious complications related to J.G.’s recently installed pacemaker and that he wanted a more accurate reading by using a rectal thermometer.  But Appellant also testified he 
would not
 have taken J.G.’s temperature rectally without her consent.  If, as Appellant testified, he would not have taken J.G.’s temperature rectally without her consent, the immediacy and split-second circumstances required to be entitled to the defense of necessity did not exist.  

Because Appellant’s own testimony negates the defense of necessity, we hold that there was no deficiency in trial counsel’s not seeking an instruction on the defense of necessity.

The Medical Care Defense

Appellant also argues he was entitled to an instruction on the medical care defense found in section 22.011(d) of the Texas Penal Code.  
Tex. Penal Code Ann.
 § 22.011(d) (Vernon Supp. 2007).  He contends that trial counsel’s failure to request an instruction on this defense rendered his trial counsel’s assistance ineffective.  We disagree.  

Texas Penal Code section 22.011(d) states that it is a defense to sexual assault if the conduct engaged in “consisted of medical care for a child and did not include any contact between the anus or sexual organ of the child and the mouth, anus, or sexual organ of the actor or a third party.”
(footnote: 1)  This defense was unavailable to Appellant for a simple reason—this defense is available only in the setting of the potential sexual assault of a 
child
.  
Id.
   J.G. is not a child.  Appellant was not deprived of effective assistance of counsel because trial counsel chose not to request a defense that was inapplicable to the facts of this case.  We therefore overrule Appellant’s first point in its entirety. 

Equal Protection and the Medical Care Defense

In his second point, Appellant argues that the medical care defense’s limited application to cases involving children is a violation of equal protection. Appellant argues that, because medical care providers who perform what otherwise would be sexual assault on disabled persons are not also entitled to use the medical care defense to the same potential offenses regarding children, he is being treated differently.  That is, Appellant argues, he is similarly situated to medical care providers who perform medical treatment on children—it just so happens he performed medical treatment on a disabled person.  And because children and disabled persons are 
often
 treated equivalently under the law, he is a similarly situated medical care provider and is being treated differently than other medical care providers simply because the victim was disabled and not a child.  We disagree. 

The United States Constitution provides that no state shall deny any person within its jurisdiction the equal protection of the laws.
 U.S. Const. , 
amend XIV, 
§ 1. 
 Our state constitution provides that all free persons have equal rights. 
Tex. Const
. art. I, § 3.  Generally, the Texas equal protection provision corresponds to the federal provision.  
Rose v. Doctors Hosp.
, 801 S.W.2d 841, 845 (Tex. 1990).  Because Appellant does not argue that his protection is greater under the Texas constitution than under the federal Constitution, his argument will be addressed under the federal Constitution.  
See Arnold v. State
, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993); 
see also Garay v. State
, 940 S.W.2d 211, 216 (Tex. App.—Houston [1st Dist.] 1997, pet. ref’d). 

In addressing constitutional challenges, we begin by presuming the statute is valid and construe the statute in favor of its constitutionality. 
 Smith v. State
, 149 S.W.3d 667, 670 (Tex. App.—Austin 2004, pet. ref’d) (citing
 Smith v. State
, 898 S.W.2d 838, 847 (Tex. Crim. App. 1995)).  The challenger has the burden of establishing unconstitutionality. 
 Wilson v. State
, 44 S.W.3d 602, 604 (Tex. App.—Fort Worth 2001, pet. ref’d). The principle of equal protection guarantees that all persons similarly situated should be treated alike.
 City of Cleburne v. Cleburne Living Ctr.
, 473 U.S. 432, 439, 105 S. Ct. 3249, 3253-54 (1985); 
Mayhew v. Town of Sunnyvale
, 964 S.W.2d 922, 939 (Tex. 1998).  To prevail on an equal protection claim, the party complaining must establish two elements:  (1) the party was treated differently than other similarly situated parties; and (2) the party was treated differently without a rational basis by the government.
(footnote: 2)  
Smith
, 898 S.W.2d at 847
;
 Henderson
, 962 S.W.2d at 560
; 
see also Johnson v. Rodriguez
, 110 F.3d 299, 306 (5th
 
Cir. 1997).  Appellant fails to establish either of these elements.

Under this first element, it is axiomatic that the Equal Protection Clause does not require things different in fact be treated in law as though they were the same.  
Smith
, 898 S.W.2d at 847
; 
see also
 
Racine Charter One, Inc. v. Racine Unified Sch. Dist.
, 424 F.3d 677, 681 (7th Cir. 2005)
. 
 
Differences based on various factual traits, circumstantial nuances, and peculiarities which by virtue of their differences make them amenable to disparate treatment are not a basis for an equal protection claim.
  
Id.
 

It is the factual traits and circumstantial nuances created by the distinction between a disabled person and a child that govern the application of the medical care defense, not who participates in prohibited conduct.  
See
 
Tex. Penal Code Ann.
 §§  22.011(c)(1), 22.011(d), 22.021(d), 22.04(c) (Vernon Supp. 2007).  All persons found guilty of having penetrated the anus of a disabled person without their consent are guilty of aggravated sexual assault—regardless of who engaged in the conduct.  
See
 
Tex. Penal Code Ann.
 § 22.021.  Furthermore, the medical care defense found in sections 22.011(d) and 22.021(d) of the Texas Penal Code is available to all persons.  
See id
.
 §§ 22.011(d), 22.021(d).  It is a defense to what otherwise would be the aggravated sexual assault of a child if the conduct was performed for the purpose of providing proper medical care for that child—regardless of who provided the medical care.
  
Id. 
§§ 22.011(d), 22.021(d). 
 
Because the conduct of aggravated sexual assault is prohibited by all persons and the medical care defense is available to all persons, there is no equal protection concern.  The distinction as to when the medical care defense applies is based on who the act is committed against, not who commits the act.  

Moreover, Appellant fails to overcome the second prong of an equal protection analysis.  Appellant contends that the State has no rational basis for allowing the medical care defense for medical care providers who perform treatment on children but not allowing it when disabled persons are involved. We disagree.  

Those attacking the rationality of a legislative classification have the burden to negate every conceivable basis that might support it. 
Anderer v. State
, 47 S.W.3d 60, 66 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d).  We will uphold a statute as long as it implements any rational purpose, even if the legislature never considered the purpose when enacting the statute. 
 Id.
 at 67, n.4.  For constitutional purposes, it is irrelevant whether the conceived reason for the challenged distinction actually motivated the legislature. 
 Id.

The legislature has a legitimate interest in making the distinction that the medical care defense is available when children are involved but not when the disabled are involved.  
See Henderson
, 962 S.W.2d at 562 (holding the legislature has legitimate and compelling interest in protecting well-being of children).
  As pointed out by the State, the general rule in Texas is that a minor cannot autonomously consent to medical or surgical treatment.  
See Little v. Little
, 576 S.W.2d 493, 495 (Tex. Civ. App.—San Antonio 1979, no writ).  In contrast, adults—even those who are disabled—are generally able to make their own decisions about submitting to medical treatment.  
See Anderson v. Hooker
, 420 S.W.2d 235, 237-38 (Tex. Civ. App.—El Paso 1967, no writ).  Furthermore, as the State points out, a person’s status as disabled does not categorically mean incapable of giving consent; rather, medical care consent is based upon the decision-making capacity of the patient.  
See 
Tex. Health & Safety Code Ann.
 § 313.002(3) (Vernon Supp. 2007).   The facts of this present case illustrate this point.  J.G. signed a number of forms consenting to a broad range of medical treatments despite her disabled status. 

We hold that the legislature’s decision—to allow the medical care defense for medical care providers who perform treatment on children but not allowing it when disabled persons are involved—is rationally related to a legitimate state interest.
(footnote: 3)  We overrule Appellant’s second point.

Conclusion

Having overruled both of Appellant’s points, we affirm the trial court’s judgment.  

ANNE GARDNER

JUSTICE

PANEL A: HOLMAN, GARDNER, and MCCOY, JJ.

PUBLISH

DELIVERED:  December 6, 2007 

FOOTNOTES
1:
This medical care defense is also available by reference to aggravated sexual assault.  
See 
Tex. Penal Code Ann.
 § 22.021(d) (Vernon 2003).

2:
If, as in this case, a statutory classification does not interfere with a fundamental right or discriminate against a suspect class, it only needs to be rationally related to a legitimate governmental purpose to survive an equal protection challenge. 
 
See Henderson v. State
, 962 S.W.2d 544, 560 (Tex. Crim. App. 1997) This is the “rational basis test.”  
Id.
  We agree with both parties that a fundamental right is not involved and that the rational basis test applies to the facts of this case.

3: As the State points out, it is difficult to understand how holding the medical care defense unconstitutional would help Appellant.  If the medical care defense did violate equal protection, the remedy would appear to be that no one, including Appellant, would be able to use the medical care defense.  It would not be this Court’s duty to expand the statute to be available to Appellant but rather strike the statute completely.  
See Smith
, 898 S.W.2d at 847 n.11.