

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-13-00074-CR

ADAM WADE REMILLARD                                         APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two points, appellant Adam Wade Remillard appeals his Class B misdemeanor conviction for failing to stop his car at the scene of an accident.[2] We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Transp. Code Ann. § 550.022(a), (c)(2) (West 2011).

## Background Facts[3]

On Christmas Day in 2010, Arlie Gillinger drove south on State Highway 121 while looking for a pharmacy where he could get medicine for his seven-year-old daughter. When Gillinger merged into a lane of traffic, he noticed that a pickup truck was behind him and that the driver of that truck, appellant, was honking his horn and extending his middle finger toward Gillinger.[4] Gillinger raised his hand "as if to apologize" to appellant and then changed his lane to move away from appellant's truck. Appellant, however, sped past Gillinger, moved into Gillinger's lane, and hit his brakes hard enough to produce smoke from his tires. Gillinger also hit his brakes, but he was not able to stop before violently colliding with appellant's truck.

Gillinger moved over to the highway's shoulder, noticed that appellant had not done so, and saw appellant exit from the highway. Gillinger then entered a lane of traffic again, began to follow appellant while generally staying two or three vehicles behind him, and called 911. Appellant passed several places where he could have stopped. In the meantime, appellant's brother, who was riding with appellant, talked to his mother about what was occurring. She began waiting by

---

[3]The facts in this section are primarily gathered from the evidence produced by the State's witnesses. Appellant provided some contradicting testimony, which we will detail below.

[4]At trial, Gillinger recognized that he might have cut appellant off when merging. Appellant testified that he had to hit his brakes to keep from hitting Gillinger when Gillinger merged.

2

her house's second-story window with a deer rifle. After Gillinger followed appellant for five or six miles, they finally stopped in front of that house.

Gillinger told appellant that the police were on their way, and appellant yelled obscenities at Gillinger. Gillinger noticed that his car had sustained so much damage that pieces were hanging off of it and fluids were leaking from it.[5]

Soon after appellant and Gillinger stopped at the house, two officers arrived at the scene and talked to appellant about what had happened. Appellant, who was very upset, said that Gillinger had cut him off, had flipped him off, and had swerved toward him, causing the accident. Appellant told the officers that he had not stopped his car earlier because he was afraid of Gillinger. But to both officers, appellant did not appear to be afraid. Instead, he showed signs of aggression and was argumentative. According to an officer's testimony at trial, appellant had not entered the house to get away from Gillinger and had not called 911 to express fear of Gillinger even though there was a cell phone in appellant's truck. The police arrested appellant. Even upon being arrested, appellant was "cussing and yelling."

The State charged appellant with failing to stop his car at the scene of the accident. Specifically, the charging instrument alleged that appellant had knowingly driven a car that had become involved in an accident away from the

---

[5]Gillinger's car sustained over $8,000 in damage.

scene of the accident without giving his name and address to any person. Appellant posted a $500 bond and was released from confinement before trial.

A few months after being charged, appellant completed a form in which he requested the appointment of counsel.[6] On the form, he certified that he was "without means to employ a lawyer of [his] own choosing." He also filed an affidavit in which he claimed to be indigent but stated that he was making money as a mechanic, that he had over $12,000 in total assets, and that his "mom help[ed]" him financially. A judge found that appellant was not indigent and denied the appointment of counsel. Appellant retained counsel despite his earlier statement that he could not do so.[7]

Appellant pled not guilty. At trial, he argued that he had not stopped after the accident because he had feared that Gillinger would harm him. The trial court instructed the jury about standards for the necessity defense under the penal code.[8] The jury convicted appellant. The trial court assessed his punishment at ninety days' confinement but suspended the imposition of the sentence and placed him on community supervision for twelve months. Appellant brought this appeal.

---

[6] *See* Tex. Code Crim. Proc. Ann. art. 26.04(c), (m), (n) (West Supp. 2013).

[7] On appeal, appellant contends that with "financial hardship," he was "forced to hire an attorney" to avoid representing himself.

[8] *See* Tex. Penal Code Ann. § 9.22 (West 2011).

4

**Right to Counsel and Due Process**

In his first point, appellant contends that the trial court abused its discretion by not appointing an attorney to represent him. Specifically, he contends in part that under the federal and state constitutions, he was "denied a right to counsel in an arbitrary and capricious manner."[9]

Appellant correctly contends that the federal and state constitutions provide a right to counsel for criminal defendants. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his [defense]."); Tex. Const. art 1, § 10 (stating that the accused shall have a right to be heard by "himself or counsel, or both"); *Franklin v. State*, 138 S.W.3d 351, 357 (Tex. Crim. App. 2004); *Reyes v. State*, 361 S.W.3d 222, 226, 229–30 (Tex. App.—Fort Worth 2012, pet. ref'd) ("Once the adversarial judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceeding."). But we conclude that these constitutional rights were protected when appellant retained counsel of his choice.[10] *See McNeil v. Wisconsin*, 501 U.S. 171, 177–

---

[9]Notably, appellant does not contend that his retained counsel was ineffective or inadequate or that retaining counsel affected his conviction or punishment. Instead, appellant argues that he was harmed because he was "forced to use his meager resources that could have been used on daily life essentials in order to avoid having no representation or representing himself."

[10]By comparison, once a court has appointed an attorney to represent an indigent defendant, "the defendant has been accorded the protections provided under the Sixth and Fourteenth Amendments." *Barnett v. State*, 344 S.W.3d 6, 24 (Tex. App.—Texarkana 2011, pet. ref'd).

78, 111 S. Ct. 2204, 2208–09 (1991) (explaining that the purpose of the Sixth Amendment's counsel guarantee is to protect unaided laymen at critical confrontations); *Wheat v. United States*, 486 U.S. 153, 159, 108 S. Ct. 1692, 1697 (1988) (stating that the essential aim of the Sixth Amendment is "to guarantee an effective advocate for each criminal defendant"); *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984) (stating that the Sixth Amendment entitles a defendant to be "assisted by an attorney, *whether retained or appointed*, who plays the role necessary to ensure that the trial is fair") (emphasis added); *Trammell v. State*, 287 S.W.3d 336, 343 (Tex. App.—Fort Worth 2009, no pet.); *see also Arguijo v. State*, No. 07-09-00297-CR, 2010 WL 4539374, at *2 (Tex. App.—Amarillo Nov. 10, 2010, no pet.) (mem. op., not designated for publication) ("A defendant's Sixth Amendment rights are protected when he has effective assistance from either retained or appointed counsel . . . ."). Thus, to the extent that appellant argues that the trial court violated his right to counsel under the Sixth Amendment or under Article 1, Section 10 of the Texas constitution, we disagree because appellant retained counsel who represented him at all of the critical stages[11] below. *See Kane v. State*, 80 S.W.3d 693, 695 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding that

---

[11]The record does not establish that any event, other than the filing of a motion for continuance, occurred in the proceedings below between April 21, 2011, when the trial court rejected appellant's assertion of indigence, and June 1, 2011, when appellant informed the trial court that he had retained counsel.

a trial court's refusal to appoint appellate counsel until after the time for filing a motion for new trial had expired did not violate a defendant's right to counsel because the defendant was represented by retained counsel during that time); *see also Reeves v. State*, No. 02-05-00122-CR, 2005 WL 3527145, at *1 (Tex. App.—Fort Worth Dec. 22, 2005, pet. ref'd) (mem. op., not designated for publication) ("[I]f a defendant has managed to retain counsel, the trial court has no duty to appoint counsel."). We overrule appellant's first point to that extent.

Furthermore, appellant contends that the trial court violated his right to due process[12] by rejecting his assertion of indigence without expressing its guidelines for doing so. Specifically, appellant contends that his "constitutional due process rights [were] violated because there is no way to know if he [was] being treated the same as every other defendant requesting a court appointed attorney." Arguments concerning due process, however, must be raised by an objection or motion in the trial court to be preserved for our review. *See* Tex. R. App. P. 33.1(a)(1); *Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) ("[N]umerous constitutional rights, including those that implicate a defendant's due process rights, may be forfeited for purposes of appellate review unless properly preserved."); *Rogers v. State*, 640 S.W.2d 248, 263–65 (Tex. Crim. App. 1981) (op. on reh'g); *Holmes v. State*, 380 S.W.3d 307, 308–09 (Tex. App.—Fort Worth 2012, pet. ref'd). We should not address the merits of an argument that

---

[12]*See* U.S. Const. amend V, XIV.

has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g).

Appellant did not raise a due process argument related to the denial of appointed counsel at any time in the trial court. Thus, we hold that appellant forfeited the argument for our review, and we overrule the remaining part of appellant's first point. *See* Tex. R. App. P. 33.1(a); *Holmes*, 380 S.W.3d at 309.

**Appellant's Necessity Defense**

In his second point, appellant contends that the evidence is insufficient to uphold the jury's rejection of his necessity defense.[13] Section 9.22 of the penal code, titled "Necessity," provides that conduct is justified if the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and a legislative purpose to exclude the justification

---

[13]Appellant asks us to conduct a factual sufficiency review, but the court of criminal appeals has eliminated such reviews for matters on which the State has the burden of proof beyond a reasonable doubt, such as negating nonaffirmative defenses. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Miranda v. State*, 350 S.W.3d 141, 147 (Tex. App.—San Antonio 2011, no pet.) (applying *Brooks* to review a jury's rejection of a defendant's self-defense claim only for legal sufficiency); *see also McCurdy v. State*, No. 06-12-00206-CR, 2013 WL 5433478, at *3 & n.3 (Tex. App.—Texarkana Sept. 26, 2013, pet. filed) (mem. op., not designated for publication) (citing and agreeing with *Miranda*). Thus, we will review the jury's rejection of appellant's necessity defense for legal sufficiency only.

8

claimed for the conduct does not otherwise plainly appear. Tex. Penal Code Ann. § 9.22.

A reasonable belief is a belief that an ordinary and prudent person would hold in the same circumstances as the defendant. *See id.* § 1.07(a)(42) (West Supp. 2013); *see also Loris v. State*, Nos. 02-11-00464-CR, 02-11-00465-CR, 02-11-00466-CR, 2013 WL 3968079, at *7 (Tex. App.—Fort Worth Aug. 1, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that a necessity instruction was not warranted because the defendant could not have had a reasonable belief that jumping out of a moving police cruiser was immediately necessary to avoid experiencing a seizure). Harm is imminent when there is an emergency situation and the actor's conduct is immediately necessary to avoid the harm. *Downs v. State*, 244 S.W.3d 511, 516 (Tex. App.—Fort Worth 2007, pet. ref'd).

Necessity is a defense by justification. *See Dotson v. State*, 146 S.W.3d 285, 292 (Tex. App.—Fort Worth 2004, pet. ref'd) (explaining that the rationale of the necessity defense, when it applies, is that even though a defendant's conduct has violated the literal language of a criminal law, the conduct is justified because the defendant has avoided harm of a greater magnitude). Justification, by definition, does not negate any element of the offense, including culpable intent; it only excuses what would otherwise constitute criminal conduct. *Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008).

9

After a defendant has introduced some evidence supporting a defense, the State bears the burden not to introduce evidence disproving the defense but rather to prove its case beyond a reasonable doubt. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991). To determine the sufficiency of the evidence to disprove the necessity defense here, we ask whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the necessity issue beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914; *Reed v. State*, No. 02-07-00156-CR, 2008 WL 1932133, at *2 (Tex. App.—Fort Worth May 1, 2008, no pet.) (mem. op., not designated for publication).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Appellant testified that he did not stop after colliding with Gillinger because he was afraid; he asserted that Gillinger "swerved at [him] . . . and seemed to be waving a firearm," although he conceded that he could not tell for sure whether he had seen a firearm because the windows on Gillinger's car were heavily

10

tinted.  Appellant stated that he had planned on contacting the police upon arriving at the house but that an officer came to the scene before he had a chance to do so.

According to appellant, upon arriving at the house, he stayed in his truck with the doors locked until he saw that Gillinger was not armed.  When appellant's attorney asked him if he would have stopped near the highway if he had felt safe, appellant said, "Yes.  I have no warrants.  I'm not wanted for any crimes.  I had no reason not to stop, except for I felt [afraid] for my life."  Appellant testified that he may have appeared angry to the responding officers because he had been threatened and chased.

Appellant testified that while Gillinger was following him, he saw Gillinger's car strike two or three other cars.  But one officer testified that he did not receive any calls that day of other cars being struck, and Gillinger testified that he did not hit any other cars.  Appellant expressed that Gillinger apparently abandoned the idea of striking appellant's car once they both reached the house.  Although appellant testified that he told both officers on the day of the accident that he believed Gillinger had pointed a firearm at him, both officers testified that appellant had made no such statement.

When he was asked at trial why he did not call the police if he had felt threatened, appellant said that he had told his brother, who was riding with him, to call the police but that his brother was too shocked to do so.  According to one officer, however, appellant's brother said that he had tried to persuade appellant

11

to stop his car after the accident. And the other officer testified that appellant's brother "seemed calm" upon the officers' arrival.

Gillinger denied that on the day of the accident, he used any obscene gesture, threatened appellant, or brandished a weapon. Gillinger testified that he did not carry a gun in his car. He explained that while following appellant, he only once drove close to appellant to obtain his license plate information.

Viewing all of this evidence in the light most favorable to the verdict and deferring to the jury's implicit determination concerning the credibility of the witnesses, we must conclude that the jury could have rationally found against appellant's necessity defense beyond a reasonable doubt. *See Saxton*, 804 S.W.2d at 914. Specifically, if the jury believed Gillinger's testimony that appellant was aggressive in causing the crash, that Gillinger never threatened appellant in any way after the crash, and that Gillinger drove close to appellant's truck only once to obtain appellant's license plate information, the jury could have rationally found that appellant did not reasonably believe that failing to stop after the accident was immediately necessary to avoid imminent harm. *See* Tex. Penal Code Ann. § 9.22(1); *see also Reed*, 2008 WL 1932133, at *3 (holding that the evidence was sufficient to support a jury's rejection of a necessity defense because the jury was "free to believe" testimony that weighed against the defendant's claim of imminent danger). Also, the jury could have rationally doubted appellant's credibility, based in part on (1) discrepancies between his testimony about making statements about a gun on the day of the offense and

12

the officers' testimony, which proved that they had not heard about appellant's claim to have seen a gun and that they would have investigated the offense differently if a gun had been mentioned; and (2) the complete absence of other evidence to substantiate appellant's testimony that on the way to appellant's parents' house, Gillinger struck two or three other vehicles.

For these reasons, we hold that the evidence is sufficient to support the jury's rejection of appellant's necessity defense. *See Saxton*, 804 S.W.2d at 914; *Reed*, 2008 WL 1932133, at *4. We overrule appellant's second point.

### Conclusion

Having overruled both of appellant's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: January 9, 2014