

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00204-CR

---

RODNEY JAMES RICKETTS                                         APPELLANT

V.

THE STATE OF TEXAS                                                 STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NO. 1321576R

----------

## MEMORANDUM OPINION[1]

----------

In two points, appellant Rodney James Ricketts appeals his third-degree-felony conviction and his forty-nine year sentence for theft of property in an amount of $20,000 or more but less than $100,000.[2] Appellant argues that the

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 31.03(a), (e)(5) (West Supp. 2014).

State presented insufficient evidence to support his conviction and that his classification as a habitual offender for punishment enhancement purposes violated his constitutional rights.[3]  We affirm.

**Background Facts**

In October 2011, Bedford police officer Miles McLain responded to an activated security alarm at a Subway restaurant.  Upon arrival, Officer McLain saw that the door to the store was open and a light was on.  Officer McLain heard a loud drilling noise coming from inside the shop.  After calling for back-up, Officer McLain hid behind a pillar outside the front of the store.  As appellant left the store, Officer McLain ordered him to the ground and arrested him.

In the ensuing investigation, the police connected appellant to a string of twenty-six burglaries beginning in January 2011.  Although the damage varied by location, the store owners suffered a variety of losses including property damage, theft of electronics, theft of tools, drilled safes, stolen cash, and the removal of several books of Texas Department of Public Safety inspection stickers.

In April 2013, a grand jury indicted appellant with theft of property valued at $20,000 or more but less than $100,000.  The indictment included a habitual offender notice for punishment enhancement purposes.  Appellant filed several pretrial documents, including an election for the jury to set his punishment if

---

[3]*See* Tex. Penal Code Ann. § 12.41(1) (West 2011), § 12.42(d) (West Supp. 2014).

convicted. At trial, appellant pled not guilty for the charge and not true to the enhancement notice.

After the presentation of evidence, the jury convicted appellant. During the punishment phase, the State presented evidence of three felony offenses out of North Carolina and a third-degree-felony offense out of Harris County, Texas. The jury returned a verdict finding the habitual offender allegations true and sentencing appellant to forty-nine years' confinement. After an unsuccessful motion for new trial, appellant brought this appeal.

## Evidentiary Sufficiency

In his first point, appellant argues that the evidence is insufficient to support his conviction. Specifically, he contends that the State failed to adequately prove the element of value because property owners testified to their replacement costs rather than the fair market value of the stolen items at the time of the thefts.[4] *See* Tex. Penal Code Ann. § 31.08(a)(1)–(2) (West 2011).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768

---

[4]Appellant contests only value. He does not challenge that the evidence is sufficient to prove that he unlawfully appropriated property with the intent to deprive owners of it or that his thefts comprised a continuing course of conduct that could be aggregated. *See* Tex. Penal Code Ann. § 31.09 (West 2011).

(Tex. Crim. App. 2013). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

To obtain a third-degree-felony theft conviction, the State needed to prove that the total value of property stolen equaled or exceeded $20,000. *See* Tex. Penal Code Ann. § 31.03(e)(5). Property includes any tangible personal property or any document, including money, which embodies something of value. *Id.* § 31.01(5)(B)–(C) (West Supp. 2014). On review, we must give proper deference to the valuation assigned by the trier of fact. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. As such, we will reverse only if the evidence shows that no rational jury could find the total value of cash, vehicle inspection stickers, and personal property at or above $20,000.

The unchallenged testimony of witnesses at trial is as follows:

- Anthony Ta, owner of Yogurtvana, reported $603.65 missing;

- Tawnya Langhoff, area supervisor of a Subway store, filed an insurance claim listing $1,356 taken;

4

- Brian Wells, owner of four Subway stores, showed a total of $2,008.61 appropriated according to his point-of-sale printouts and estimated another $280 missing in cash tips;

- Terry Clifford, representative at EmbroidMe, testified to $100 stolen out of the cash drawer;

- Celestin Muhindura, operator of a small, local restaurant, showed $2,200 taken according to a computer report;

- Monte Daily, owner of a Kwik Kar, reported $625 in cash stolen;

- Kelly Privett, owner of another Kwik Kar, estimated losing $200;

- Rabih Asmar, owner of a Subway store, showed $940.60 appropriated according to point-of-sale printouts;

- James Cole, employee at a Kwik Kar, estimated $200 stolen from the safe;

- Patrick Starrett, corporal for the patrol division of the Colleyville Police Department, testified to taking a report of $200 missing after a burglary of a Burger Island store;

- Geoffrey Malecky, manager of a Subway store, reported $548 taken according to point-of-sale printouts;

- Bharat Patel, owner of a Subway store, estimated $1,300 missing from the safe and back office;

- Wyatt Hurt, owner of Fat Daddy's, reported a total of $2,200 stolen;

- Donnie Wilkerson, owner of a Subway store, showed a total of $3,934.41 stolen according to end-of-day reports and a verified counter check;

- Bhupendra Patel, owner of a Subway store, testified to $908.63 appropriated according to point-of-sale printouts;

- Richard Hollis, owner of a Subway store, estimated $900 taken;

- Donnie Rogers, area supervisor for a Subway store, reported $910.14 stolen from his safe;

- Sandra Leonard, manager of a Subway store, reported $1,253 missing to the police;

- Caterina Kuan, employee at a Subway store, showed $910.63 taken according to point-of-sale printouts; and

- Kanwar Singh, owner of a Subway store, testified to $1,090 taken from his safe.

In addition to cash stolen, a representative from the Texas Department of Public Safety calculated the value of the inspection stickers taken from the Kwik Kar stores at $6,139.75. He testified that there is an active market for these stickers and that a full book of stickers could be liquidated for cash.

On appeal, appellant does not contest the amount of cash stolen or the value of the inspection stickers. Instead, he focuses on other property and a distinction between fair market value and replacement value.[5] However, as the uncontroverted testimony of the property owners established that appellant stole more than $20,000 in cash and inspection stickers, we need not reach the issue of proper valuation of the other property. *See Gilmore v. State*, 397 S.W.3d 226, 243–44 (Tex. App.—Fort Worth 2012, pet. ref'd) (explaining that if evidence is sufficient to support guilt under one theory, we need not address other theories) (citing *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003)).

---

[5]Specifically, appellant focuses on the value of stolen computers, computer components, and recording equipment. He argues, "The record is replete with examples from the various franchise owners testifying to the replacement cost of the components taken from electronic units or used computers . . . without first ascertaining their fair market value near the time of the burglary."

Adding the amounts described above, appellant stole $22,668.67 in cash. Although at trial appellant attempted to undermine the property owners' testimonies of cash taken, he has not challenged that evidence on appeal, and determining the weight and credibility of the witnesses' testimonies remains the exclusive role of the jury. *See Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Adding the value of the inspection stickers, appellant stole a total of $28,808.42 before valuing the other property that he focuses on in this appeal. Considering this figure, we conclude that a rational jury could have found beyond a reasonable doubt that appellant stole more than $20,000 in property. Accordingly, we hold that the State presented sufficient evidence to prove the element of value. We overrule appellant's first point.

## Punishment Enhancement

In his second point, appellant contends that the trial court violated his due process rights and his right to equal protection under the laws[6] when it allowed his North Carolina convictions to be used for sentence enhancement. Specifically, appellant argues that his North Carolina convictions would have been only state-jail felonies if committed in Texas. As such, appellant argues that he is being treated differently than a similarly situated Texas convict who committed only a state-jail felony. *See* Tex. Penal Code Ann. § 12.42(d)

---

[6]In summarizing his point, appellant cites the Fifth and Fourteenth Amendments to the federal constitution. *See* U.S. Const. amends. V, XIV. He also cites article I, sections 13 and 17 of the Texas constitution. *See* Tex. Const. art. I, §§ 13, 17.

(increasing the punishment range to twenty-five years to life when a convicted felon has twice before been convicted of a felony but stating that state-jail felonies may not be used for this enhancement).[7] *But see id.* § 12.41(1) (stating that a conviction obtained outside of the penal code is classified as a third-degree felony if confinement in a penitentiary was a possible punishment).[8] In response, the State argues that appellant has not preserved his constitutional complaints.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Landers v. State*, 402 S.W.3d 252, 254 (Tex. Crim. App. 2013); *Sample v. State*, 405 S.W.3d 295, 300 (Tex. App.—Fort Worth 2013, pet. ref'd). The trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining

---

[7]The State proved a third-degree-felony conviction (possession of between one and four grams of cocaine) in Texas for appellant. Thus, if one North Carolina conviction also qualified as an enhancement-worthy felony under section 12.42(d), appellant was subject to the increased penalty range of twenty-five years to life.

[8]The record shows that in 2001 in North Carolina, appellant was convicted of multiple counts of breaking and entering. It is undisputed that confinement in a penitentiary was a possible punishment for those offenses. The judgments from those convictions required imprisonment with the North Carolina Department of Corrections. Appellant appears to recognize that under section 12.41(a), his breaking and entering convictions from North Carolina qualify as third-degree felonies in Texas, but he contends that this qualification violates his constitutional rights.

party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g); *Sample*, 405 S.W.3d at 300.

Further, the complaint made on appeal must comport with the complaint made in the trial court or the error is forfeited. *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). To determine whether the complaint on appeal comports with that made at trial, we consider the context in which the complaint was made and the parties' shared understanding at that time. *Clark*, 365 S.W.3d at 339; *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009).

If the complaint alleges a violation of constitutional rights, the appellant must show a specific objection at the trial level or face forfeiture of the claim. *See Clark*, 365 S.W.3d at 340 ("The court needs to be presented with and have the chance to rule on the specific constitutional objection because it can have such heavy implications on appeal."). This requirement applies to both "facial" and "as applied" challenges to the constitutionality of a statute. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008).

Appellant draws our attention to his objection to the trial court's charge on punishment. In that objection, appellant claimed that allowing the North Carolina

9

convictions to enhance his punishment created a full faith and credit[9] issue and discriminated against him for being a citizen of another state at the time of the prior crimes' commission. At one point, appellant argued,

> What I'm trying to prove up is that the habitual enhancement . . . is going to be incorrect in that the convictions in North Carolina treat my client differently because his convictions are from another state[,] and . . . what he's actually been convicted of would be equivalent to a [state-jail felony] here in Texas.

Outside of his objection to the charge on punishment, appellant did not present any other requests, motions, or objections to preserve a constitutional complaint.

By contrast, in his brief, appellant complains of four (two state and two federal) constitutional violations. As appellant failed to raise his federal due process and his state constitutional claims at the trial level, we hold that he has forfeited these claims. *See Clark*, 365 S.W.3d at 340.

While appellant also never explicitly protested on equal protection grounds, the objection to the charge on punishment suffices to preserve the argument. In context, it appears that the parties understood appellant's contention to be that he faced a higher degree of punishment than that of a similarly situated Texas criminal based solely on his state of residency at the time of his prior criminal convictions. *Cf. id.* at 339 (noting that a non-specific error may be preserved for review if the specific grounds are apparent from the context). As such, appellant's as-applied equal protection challenge to the constitutionality of the

---

[9]*See* U.S. Const. art. IV, § 1. Appellant does not cite this provision on appeal.

10

punishment enhancement statute has been properly preserved.  *See* U.S. Const. amend. XIV; *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013) ("The Equal Protection Clause of the Fourteenth Amendment requires that 'all persons similarly situated shall be treated alike' under the law.") (quoting *Wood v. State*, 18 S.W.3d 642, 651 n.9 (Tex. Crim. App. 2000)); *Downs v. State*, 244 S.W.3d 511, 518 (Tex. App.—Fort Worth 2007, pet. ref'd) ("To prevail on an equal protection claim, the party complaining must establish two elements: (1) the party was treated differently than other similarly situated parties; and (2) the party was treated differently without a rational basis by the government.").

But the equal protection challenge cannot succeed under the facts of this case.  While the Equal Protection Clause generally requires the same governmental treatment for similarly situated persons, appellant has not proved that he is similarly situated to someone who committed only a state-jail felony in Texas.  In other words, he has not established that his North Carolina convictions would have qualified as Texas state-jail felonies.

The judgments from appellant's North Carolina cases reflect that he was convicted of "BREAKING AND OR ENTERING" under section "14-54(A)" of that state's general statutes.  That section states today, as it did at the time of appellant's crimes, that any person "who breaks or enters *any building with intent to commit any felony* or larceny therein shall be punished as a Class H felon." N.C. Gen. Stat. Ann. § 14-54(a) (West 2013) (emphasis added).  In other words, North Carolina provides the same level of classification and punishment for

11

breaking and entering regardless of whether the crime is committed in a residence. *See id.*

In Texas, however, burglary (which includes entering a habitation or building with intent to commit any felony) is a state-jail felony if committed in a building other than a habitation but a second-degree felony (or in some cases a first-degree felony) if committed in a habitation.[10] *See* Tex. Penal Code Ann. § 30.02(a)(1), (c), (d) (West 2011). Thus, appellant's breaking and entering crimes in North Carolina could have qualified, if committed in Texas, as either state-jail felonies (which cannot be used for enhancement under section 12.42(d) of the penal code) or more serious felonies (which can be used), depending on the facts of those crimes. But the record does not disclose whether any of appellant's North Carolina breaking and entering convictions involved entering a residence.[11] Thus, it is impossible to discern whether appellant, by effect of his North Carolina convictions, is similarly situated with a Texas state-jail-felony convict, who would not be subject to enhancement under section 12.42(d) of the

---

[10]We disagree with appellant's statement in the trial court that the Texas and North Carolina statutes "seem[] to track" each other.

[11]In the trial court, appellant appeared to recognize the need for developing evidence of the facts surrounding his North Carolina offenses, stating, "If . . . the North Carolina fact pattern for the offense . . . is the same exact fact pattern as what in Texas would only be a [state-jail felony], then it will cause my client to be enhanced by the word 'felony' and not by the actual offense committed."

penal code. Therefore, his equal protection claim cannot succeed.[12] *See Downs*, 244 S.W.3d at 518; *Tucker v. State*, 136 S.W.3d 699, 701 (Tex. App.—Texarkana 2004, no pet.) (overruling an appellant's equal protection argument because, in part, the record did not indicate whether the appellant's out-of-state convictions involved burglary of a building or a habitation). We overrule appellant's second point.

## Conclusion

Having overruled appellant's points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DAUPHINOT, J., filed a dissenting opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 4, 2014

---

[12]We do not reach whether appellant could have succeeded on his equal protection claim if he had proved that he was similarly situated with Texas state-jail-felony convicts. We note, however, that the court of criminal appeals has held that a conviction for a federal offense that would not be a felony under Texas law may enhance a sentence under section 12.42. *See Ex parte Blume*, 618 S.W.2d 373, 374, 376 (Tex. Crim. App. 1981); *see also Alvarado v. State*, 596 S.W.2d 904, 906 (Tex. Crim. App. [Panel Op.] 1980) (concluding that a felony conviction under a former penal code could be used for enhancement even though the crime was not a felony under a new penal code); *Dotson v. State*, 28 S.W.3d 53, 56–57 (Tex. App.—Texarkana 2000, pet. ref'd) (holding that a Louisiana felony theft conviction could be used for enhancement although the crime would have qualified only as a Class B misdemeanor in Texas).

13